**CONNERS–STANDARD MARINE CORP.**

v.

**THE MARGARET MATTON.**

**THE C.M.C. NO. 30.**

**THE C.M.C. NO. 10.**

**THE RALPH E. MATTON, Inc.**

United States District Court
S. D. New York.

May 14, 1954.

Purdy, Lamb & Catoggio, New York City, for libelant.

Mahar & Mason, New York City, by Frank C. Mason, New York City, of counsel, for claimant.

GODDARD, District Judge.

The Conners-Standard Marine Corporation, owner of the barges C.M.C. No. 30 and C.M.C. No. 10, sues the tug Margaret Matton and tug Ralph E. Matton, Inc., to recover damages alleged to have been sustained by the barges on October 4, 1950 in the New York State Barge Canal.

About 12:30 A.M., the tug Dynamic, after passing through Lock 17, was proceeding west to Buffalo with a tow of four barges laden with molasses. The barges were The C.M.C. No. 10, C.M.C. No. 30, C.M.C. No. 40 and C.M.C. No. 20, and were in tandem formation.

The Dynamic was a diesel tug of 380 H.P., 63 feet long with a beam of 18 feet and a draft of 9.6 feet; the barges were of uniform dimensions 114 feet long, 36 feet wide, with a draft of 10 feet and 12.8 feet inside depth. The C.M.C. No. 10 was made fast to The Dynamic with two 5½" hawsers—one on the port, and one on the starboard side, and was about 30 feet astern of The Dynamic. The three following barges were close coupled, The C.M.C. No. 30 being about 2 feet astern of The No. 10. There were no steering wheels on the barges.

It was a clear night and, after The Dynamic left the Lock, the lights of a tow could be seen ahead. This tow was

the eastbound tug Margaret Matton and the oil barge Dwyer No. 104 made up in pushboat fashion, with the bow of The Matton 6 feet into a slot in the center of The Dwyer's stern, and a single steel cable on the port and on the starboard side, making a stiff tow. The Dwyer was moored to a concrete retaining wall on the north side of the Canal about one-quarter of a mile west of the Lock. There is a bend in the Canal at this point and a signal light on the wall indicates to eastbound tows when they may proceed. Since the light showed red, The Matton had its tow tied up to the bitts on the north wall provided for that purpose, to allow the westbound tow to clear the Lock and pass.

The Matton is a diesel tug of 1200 H. P. and is 81.8 feet long, with a beam of 23 feet and a draft of 10.9 feet. The Dwyer is 218 feet long, with a 42-foot beam and inside depth of 15 feet. It was in water ballast and drew six feet of water.

The channel at this point is 94 feet wide with the concrete wall on the north and a rocky island on the south. The depth of the water at this point is about 12 feet.

The mate of The Dynamic was in the pilot house steering, at the time. He testified that as he approached The Matton at a speed of 2 miles per hour, he put his searchlight on and that, when The Dynamic was halfway past The Dwyer, he saw quick water at the stern of The Matton, whereupon he blew an alarm for The Matton to stop her propeller but it continued to turn; that the quick water from The Matton caused The Dynamic's bow to sheer to port and the starboard hawser of The No. 10 parted; that The Dynamic swung around to the port side of The No. 10 and her port hawser parted; that the momentum of the barges carried them past The Dynamic and The No. 10 grounded on the mainland west of the island on the south side of the Canal and The No. 30 jammed its bow into the stern of The No. 10; that none of his barges came in contact with The Dwyer or The Matton.

The testimony of the captain of The Dynamic and the bargee of The No. 30 is substantially to the same effect. The bargee of The No. 10, who was in her cabin, said that he felt no bump or contact with The Dwyer.

Meanwhile, The Matton with its tow had proceeded on to the Lock. After the grounding, The Dynamic pulled its tow over to the north wall and moored it there. While the captain of The Dynamic stayed to examine the damage to the barges, the mate of The Dynamic returned in her to the Lock and told the mate of The Matton of the damages sustained by the barges as a result of The Matton's quick water. The Dynamic's mate testified that the mate of The Matton refused to go back and examine the damage, saying that he had a right to work his propeller and to proceed, as the light on the wall was then green.

The testimony of The Matton's mate, who was on watch at the time, was that The Matton had been waiting at the wall for two hours, with The Dwyer moored snug to the wall with four lines; that, as The Dynamic approached, her tow was kinked and out of line and The No. 10 sheered toward The Dwyer; that The No. 10 came in contact with the starboard bow quarter of The Dwyer and rubbed along its full length and then struck The Matton, causing damage to The Matton; that when The No. 10 hit The Dwyer it caused the stern of The Dwyer to sag 3 feet out from the wall, although none of its lines parted; that he ran the engines only for a minute, stopping them when The Dwyer was back against the wall. At this time, he says that The Dynamic was not yet abreast of The Matton; and that he ran his engines to prevent The No. 10 from snagging the starboard cable from The Matton to The Dwyer. He says he did not see the hawsers from The Dynamic to The No. 10 part, nor did he see it ground, for he paid no attention to it; that The Matton then moved to the Lock; and that, while at the Lock, the mate of The Dynamic came back and told him about the damage. He denies

that he said that he had a right to work the propeller; he says that he refused to go back because he said that nothing had happened. He did not inform the mate of The Dynamic of the damage he now claims was sustained by The Matton.

After the incident, The Matton's mate filed a report with the owners which states that The Dynamic's tow struck The Dwyer and The Matton and that the tow in passing sucked The Dwyer from the wall, The Dwyer being moored by two lines, and that he ran his engines to try to clear the on-coming tow.

A survey of The No. 10 and The No. 30 was held on March 22, 1951 but the claimant's representative refused to join in the report. The Dynamic is said to have sustained slight damage to her bow planks, but libelant's claim is solely for damages to The No. 10 and The No. 30. The Matton, though denying liability, concedes some damage to The No. 10.

The issue presented is primarily one of fact. It is the libelant's claim that the working of The Matton's propeller in the narrow channel created quick water causing The Dynamic's tow to sheer to port onto the shore. It is the claimant's contention that The Dynamic, in trying to correct a sheer into The Dwyer, over-corrected it and pulled her tow on to the south shore; that the working of The Matton's propeller would, if anything, create a suction of The Dynamic toward The Matton—not away from it.

The outcome depends upon the credibility of the witnesses and the probabilities.

Had the tow of The Dynamic been kinked and out of line, and sheering toward The Dwyer, as it approached, it would seem reasonable that the mate of The Matton would have given an alarm signal, which he did not do. Furthermore, had The No. 10 hit The Dwyer on The Dwyer's starboard bow quarter and rubbed along its entire length, it is a fair assumption that the pressure on The Dwyer by The No. 10 would tend to hold The Dwyer against the wall or, if its stern had sagged from the wall to force it back against the wall. In either event, it would become unnecessary for The Matton to work her engines. Assuming, for the moment, that The No. 10 did sheer and rub along The Dwyer which was moored close to the wall, this would tend to correct the sheer of The No. 10. Yet, it is the testimony of The Matton's mate that The No. 10 came in contact with The Matton and rubbed along her side. The Dwyer had a beam of 42 feet but The Matton's beam was only 23 feet. For The No. 10 to have swerved so far to the starboard as to come in contact with The Matton, it would seem to require a violent sheer, under the circumstances, on the part of The No. 10. This does not seem consistent with the subsequent action of The Matton in moving on without observing what happened to The Dynamic and its tow, nor with The Matton's mate's testimony that he refused to go back to inspect the damage claimed by The Dynamic because "nothing happened". It is also significant that he failed to report to the mate of The Dynamic the alleged damage to The Matton.

Neither the mate of The Dynamic, nor the bargee of The No. 10, are now in the employ of the libelant, although the mate of The Dynamic is a relative of The Dynamic's captain. Aside from the greater number of witnesses for the libelant, I was impressed with their demeanor and the quality of their testimony.

The barges in The Dynamic's tow were 36 feet wide and The Dwyer was 42 feet wide, leaving only 16 feet of the 94-foot channel for movement in water of 12-foot depth, and the operation of the propeller of the 1200 H. P. Matton's engines was dangerous and likely to cause trouble for The Dynamic and her tow. As The Matton and her tow were close to the concrete wall, the operation of her propeller would probably cause the water to hit the wall and violently surge across

the channel and cause The Dynamic's tow to sheer to port toward the south side of the channel.

I find that the negligent operation of The Matton's propeller, while The Dynamic and her tow were passing, was the sole cause of the damage to the barges, No. 10 and No. 30.

A decree may be entered for the libelant with costs, and a Commissioner will be appointed to assess the damages. This opinion includes findings of fact and conclusions of law.